UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SYNAGRO NORTHEAST, LLC,<br><br>   Plaintiff,<br><br>   v.<br><br>UNITED WATER NEW YORK, INC.<br><br>   Defendant. | Civil Action No.: 7:16-cv-500 |

**COMPLAINT**

Plaintiff, Synagro Northeast, LLC ("Synagro"), by and through its undersigned counsel, hereby files this Complaint against United Water New York, Inc. ("UWNY") (together the "Parties") and states:

**PARTIES AND JURISDICTION**

1. Plaintiff Synagro Northeast, LLC is a Delaware limited liability company having its principal place of business in Connecticut.

2. Synagro Northeast, LLC is a wholly-owned subsidiary of Synagro Technologies, Inc., a Delaware corporation with its principal place of business in Maryland.

3. Defendant United Water New York, Inc. is a New York corporation with its principal place of business in New York.

4. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1331 insofar as the Parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

1

5. Venue is proper pursuant to 28 U.S.C. § 1391 insofar as UWNY has its principal place of business in West Nyack, New York, and therefore resides within New York, and a substantial part of the events or omissions giving rise to the claim occurred in West Nyack, New York.

## BACKGROUND

6. Plaintiff and Defendant entered into a duly executed Services Standard Agreement, dated May 1, 2013 (the "Contract"), relating to the management, transportation and removal of waste sludge from a West Nyack, New York, water treatment facility owned and operated by UWNY ("Facility").

7. A true and correct copy of the Contract is attached as **Exhibit A** and incorporated as if fully set forth herein.

8. UWNY breached its contract with Synagro by refusing to pay under the terms of the Contract, by terminating the Contract without cause and, upon information and belief, by replacing Synagro with a third-party contractor—all of which has damaged Synagro.

*Key Contract Terms*

9. The three-year Contract commenced May 1, 2013 and is to expire April 30, 2016. Ex. A at §A, cls. 8-9; §B, cl. 3.

10. Under the Contract, UWNY could terminate Synagro if it abandoned the work, was unable to obtain bond, if required, impermissibly assigned the agreement or subcontracted the work or otherwise failed to comply with the Contract. Ex. A at §B, cl. 16.

11. Under the Contract, UWNY was not permitted to complete the work itself or engage a third party contractor to complete the work unless and until it terminated the Contract for cause. Ex. A at §B, cl. 16.

12. Schedule A to the Contract provides, *inter alia*, that Synagro "shall be responsible for management, hauling and disposal of sludge produced at the United Water New York treatment facility," and that during the term of the Contract, Synagro "shall manage the entire volume of wastewater Sludge produced at the treatment facility," to include "[s]ludge management & removal services of two (2) lagoons and one (1) drying bed."  Ex. A at Sch. A.

13. Under Schedule A, management of residuals from the lagoons means "a series of on-site transfers, turning, stockpiling, loading and transportation of the material" to a blending facility in Danielson, Connecticut.  Ex. A at Sch. A.

14. Schedule B to the Contract sets forth the price terms for sludge management and removal services:

> Pricing for the on-site management of these residuals, loading, transportation, and disposing of them will be $120.00 per wet ton.
>
> Contract years one (1) and two (2) invoiced at $120.00 per wet ton removed.  Contract year three (3) will be priced at $130.00 per wet ton.

15. Schedule B also contains a "Contingency Plan" provision that states, "Additionally, a liquid transportation and disposal option may be used in the event of an emergency.  This option would be priced on a cost plus 10% basis."  Ex. A at Sch. B.

16. The Contract further provides that in the event of a payment dispute, UWNY shall withhold only the amount in dispute and not the undisputed portion.  Ex. A at §B, cl. 7.

*Facts*

17. The Contract went into effect May 1, 2013.

18. Synagro emptied UWNY's drying bed in summer 2013, which was a first step under the Contract.

19. In the process of clearing the drying bed, Synagro became aware of very low solids content of sludge in UWNY's drying bed.

20. Synagro thus wrote UWNY, on August 20, 2013, proposing to repair UWNY's drying bed because it was not functioning properly.

21. A true and correct copy of Synagro's August 20, 2013 letter is attached as **Exhibit B** and incorporated as if fully set forth herein.

22. In the very first paragraph of its letter, Synagro told UWNY,

> "After years of use this bed has become more of a settling basin then an efficient residuals drying area. It is for this reason that Synagro highly recommends that now that the bed is finally emptied of residuals, United Water (UW) takes the time and added expensive [sic] to return this bed to a useful and functioning drying bed."

23. Synagro proposed to reconstruct the drying bed for $149,000 and to reline the base of the bed to allow for proper drainage and much more efficient drying to take place. Ex. B at p.1, ¶ 2.

24. To illustrate the value of the repair, Synagro calculated that over the course of the three-year contract, the repair would more than pay for itself because Synagro would be hauling substantially more residuals and less water at the contractual rate of $120.00 per wet ton. Ex. B at p. 2.

25. UWNY acknowledged that repairing the drying bed made sense long-term.

26. UWNY nevertheless declined to repair its drying bed in 2013.

27. Synagro also informed UWNY in 2013 of a crushed drain pipe in its drying bed.

28. UWNY did not repair the drain pipe in 2013.

29. Rather than reconstruct the drying bed, UWNY authorized Synagro to construct, at no cost to UWNY, a drain box around the crushed drain pipe as a work-around to promote drainage from the drying bed.

30. After Synagro constructed the drainbox in fall 2013, Synagro began moving sludge from the lagoons to the drying bed.

31. In 2013, Synagro billed UWNY approximately $551,000 using the $120.00 per wet ton formula, and UWNY paid the bill.

32. Because UWNY refused to reconstruct the drying bed as repeatedly recommended by Synagro, the drying bed continued to be ineffective and the solids content of materials from the drying bed continued to decline.

33. As a result, in August 2014 Synagro requested, and UWNY agreed, to start using liquid tanker trucks to haul UWNY's wet sludge.

34. UWNY also asked Synagro at this time to consider hauling sludge directly from one of the lagoons instead of the drying bed, although this was not done in 2014.

35. Around this same time, the Danielson, Connecticut disposal facility refused to accept any more sludge from the UWNY Facility because of the low solids content.

36. Thus, with UWNY's consent, Synagro hauled wet sludge to a waste disposal site named Scott's during fall 2014 as a short-term solution.

37. In 2014, Synagro billed UWNY approximately $805,000 using the $120.00 per wet ton formula, and UWNY paid the bill.

38. In early 2015, Synagro helped UWNY sample and test its sludge to apply for disposal at the Passaic Valley Sewerage Commission ("PVSC") in New Jersey, which would accept UWNY's wet sludge.

39.No sludge was hauled in the first five months of 2015.

40.In May 2015, Synagro again asked UWNY if it planned to reconstruct its drying bed, and UWNY responded that this capital expenditure had been pushed to 2016.

41.Hauling resumed in June 2015, and at UWNY's direction Synagro took sludge directly from the lagoons without first moving it to the drying bed, as the drying bed was full of wet material at the time.

42.In June 2015, Synagro hauled 1,434.63 wet tons of sludge. At the rate of $130.00 per wet ton, it is owed $186,501.09 plus interest.

43.On June 26, 2015, UWNY called Synagro and asked it to apply the emergency pricing rate to its June invoices, which is cost plus 10%.

44.Synagro declined because there was no emergency.

45.UWNY withheld the entire June payment.

46.Synagro performed removal services under the Contract in July.

47.In July 2015, Synagro hauled 7,141.67 wet tons of sludge. At the rate of $130.00 per wet ton, it is owed $928,417.10 plus interest.

48.Again, UWNY took the position that Synagro use the cost plus 10% emergency pricing term for the July bill, and again, Synagro declined because there was no emergency.

49.UWNY withheld the entire July payment.

50.Synagro performed removal services under the Contract in August.

51.In August 2015, Synagro hauled 1,843.30 wet tons of sludge. At the rate of $130.00 per wet ton, it is owed $239,629.00 plus interest.

52.UWNY took the position that Synagro use cost plus 10% emergency pricing for the August bill, and Synagro declined because there was no emergency.

53. UWNY withheld the entire August payment.

54. Upon information and belief, UWNY engaged a third-party contractor beginning September or October 2015.

55. On October 5 and 16, Synagro wrote to UWNY expressing its intention and plan to come to the Facility to remove sludge.

56. UWNY responded on October 19, 2015, by terminating the Contract with Synagro ("Termination Letter") and instructing Synagro to remove immediately all of its equipment from the Facility, which Synagro did.

57. A true and correct copy of UWNY's Termination Letter is attached as **Exhibit C** and incorporated as if fully set forth herein.

58. In its Termination Letter, UWNY alleged for the first time that Synagro broke the drain at the bottom of the drying bed causing the sludge to be wet and heavy. UWNY also reasserted that "emergency" pricing should apply.

59. UWNY's Termination Letter did not state a ground to terminate for cause contemplated by Section 16 of the Contract.

60. UWNY had known since 2013 that its drying bed did not function.

61. UWNY had known since 2013 that its drain pipe was broken.

62. Indeed, with UWNY's consent, Synagro made numerous accommodations to UWNY (different trucks, different disposal facility, hauling directly from the lagoons, the drain box) to address the fact that UWNY's drying bed never functioned during the Contract term.

## COUNT I
## BREACH OF CONTRACT

63. Synagro re-alleges and incorporates each of the preceding paragraphs as if fully set forth herein.

64. Synagro and UWNY executed a valid and binding Contract.

65. Synagro did not breach the Contract and remains ready, willing and able to perform.

66. UWNY has breached the Contract by failing to pay Synagro for services rendered under the price terms set forth in the Contract.

67. UWNY has breached the Contract by asserting an emergency after the fact, where none existed, to trigger a favorable pricing term, and further, or in the alternative, such conduct is not in good faith and fair dealing.

68. UWNY has breached the Contract by withholding entire payments instead of withholding only the difference between the amount billed and the emergency rate that UWNY contended applied, and further, or in the alternative, such conduct is not in good faith and fair dealing. *See* Ex. A at §A, cl. 7.

69. UWNY has breached the Contract by terminating the Contract without cause, and further, or in the alternative, such conduct is not in good faith and fair dealing.

70. Upon information and belief, UWNY has breached the Contract by replacing Synagro with a third-party contractor from September 2015, and further, or in the alternative, such conduct is not in good faith or fair dealing.

71. UWNY's breaches have destroyed and injured Synagro's right to receive the fruits of the Contract and deprived Synagro of the benefits of the bargain.

72. For services rendered, Synagro has suffered damages of $1,354,547.19 plus interest.

73. Synagro also has suffered lost profits estimated at $579,380.00 plus interest for the period September 1, 2015 to April 30, 2016.

WHEREFORE, Plaintiff, Synagro Northeast, LLC, respectfully requests that this Court enter judgment in its favor and against Defendant, United Water New York, Inc., in the amount of $1,933,927.19 plus interest, costs, attorneys' fees and any other further relief this Court deems proper.

Respectfully Submitted,

*/s John A. Basinger*
John A. Basinger (JB-6787)
Saul Ewing, LLP
One Riverfront Plaza
1037 Raymond Blvd, Suite 1520
Newark, NJ 07201
(973) 286-6724
jbasinger@saul.com

*Attorney for Plaintiff*
*Synagro Northeast, LLC*